UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GRAYLING TRIGG SMITH,

                    Plaintiff,                  Case No. 1:12-cv-285

v.                                       Honorable Robert Holmes Bell

CAROL HOWES et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim.

**Factual Allegations**

Plaintiff Grayling Trigg Smith presently is incarcerated with the Michigan Department of Corrections and housed at the Ionia Maximum Correctional Facility, though the actions about which he complains ostensibly occurred while he was housed at the Bellamy Creek Correctional Facility (IBC),[1] the Lakeland Correctional Facility (LCF) and the Gus Harrison Correctional Facility (ARF). Plaintiff sues the following LCF officials: Warden Carol Howes; Inspector William Irvin; Assistant Resident Unit Supervisor (ARUS) Brenda Lescow; and Lieutenant (unknown) McConnell. Plaintiff also sues the following ARF employees: ARUS (unknown) Condon; Resident Unit Manager (RUM) (unknown) Ingram; Warden Thomas Bell; and Hearing Officer (unknown) Jacobsen.

Plaintiff's complaint is disorganized and largely conclusory. It encompasses a variety of actions during the period between March 8, 2009 and June 1, 2010. According to the complaint, Plaintiff filed a total of 26 grievances between those dates, 16 of which he has attached to the complaint. Regrettably, Plaintiff's grievances frequently are as conclusory as his complaint, consisting mostly of invective and sweeping allegations of retaliation and abusive behavior.

The first paragraph of the complaint provides an example of the generality of the allegations throughout:

> While performing authorized duties as a (WARDENS FORUM) member at LCF I WAS retaliated against for raising issues concerning racial disparities amoungst [sic] staff, requesting an audit of pbf funds, and for apposing [sic] the no bid contract giving a ST Louis company MI. stores. Then from 3-4-09 thru # 3-23-2010 I WAS SUBJECTED TO CONTINUOUS ACTS OF ABUSE AT THE DIRECTION OF CAROL HOWES. ONLY FINDING REFUGE @ IBC AFTER THAT FACILITY REFUSED TO PARTICIPATE IN HARRASSMENT [sic]. 3-4-

---

[1]The Court notes that Plaintiff fails to name any Defendant employed at IBC.

09 [I] was kept caged for (5) hours handcuffed, THEN sent to a facility known to have disdain for me by LCF Staff and Administration, Howes, Irvin, McConnel [sic] and Leskow involved.   PROPERTY WITHELD [sic] ALL FILES AND DOCUMENTS REMOVED.

(Compl. at 4, docket #1, Page ID#4.)

In his few allegations about individual conduct, Plaintiff alleges that Inspector Irvin wrote a "bogus" misconduct on an unknown subject, allegedly in retaliation and in an effort to thwart Plaintiff's exhaustion of his administrative remedies.  Plaintiff also alleges that he was transferred by an unnamed person from LCF to ARF on or about March 4, 2009,[2] ostensibly for his work on the Warden's Forum.  He complains that he was given only an hour to pack up his property.  When Plaintiff arrived at ARF, he allegedly was placed in a room with a mental patient and unidentified staff refused to provide toiletries for an unspecified time.  Plaintiff claims that he "WAS MET WITH DENIAL OF ANY AND ALL RIGHTS AFFORDED TO SIMILARLY SITUATED MEN. HAVING NOTHING BUT THE CLOTHING I WAS WEARING.  I WAS UNABLE TO GET A CHANGE OF CLOTHES FOR WELL OVER A WEEK! PLEAS TO RUM INGRAM, CONDON FELL ON DEAF EARS."  (*Id.* at 5.)

According to the attachments to the complaint, Plaintiff was transported to the control center at LCF in the afternoon of March 4, 2009, "for suspicion of concealing tobacco items, dangerous contraband, strong arming and running a prisoner store."  (Attach. E to Compl., docket #1-3, Page ID#35.)  Plaintiff was placed in a holding cell before he was transferred out of the facility on an emergency transfer.  Because Plaintiff had a large amount of property, it could not be checked for contraband before his transfer.

---

[2]In his complaint, Plaintiff records the date of transfer as "3-37 09."  However, according to the first paragraph of the complaint and the grievances attached to the complaint, the transfer occurred on March 4, 2009.

Plaintiff alleges that he received a "bogus" misconduct ticket on March 11, 2009. (Compl. at 5.)  On March 12, 2009, Defendant Adams allegedly conducted an improper review of the misconduct ticket, in violation of policy.  According to the complaint, on March 14, 2009. Adams allegedly "doctor[ed]" in some unspecified way the misconduct ticket.  (*Id.*)

According to Plaintiff's grievances and responses, Plaintiff's property (consisting of two footlockers, one duffle bag, one television, one typewriter and three bags of contraband) was sent to ARF on March 17, 2009.  (Attach. E to Compl., docket #1-3, Page ID#35.)  Once Plaintiff's property reached ARF, a further hearing was held on April 6, 2009 on the excess and contraband property.  Plaintiff complains that the hearing was "bogus" and that it was a ploy to rifle through his property.  He alleges that Defendant Condon stole photos of his female friends.  (Compl. at 5.)  He alleges that an unnamed person destroyed his property, including UCC documents, on April 10, 2009, before he could have family pick them up.  (*Id.*)

Plaintiff also complains that, on May 18, 2009, Defendant RUM Ingram made racist remarks about correspondence between Plaintiff's friend and the warden's office.  On January 27, 2010, Defendant Condon allegedly used racial slurs about the women depicted in Plaintiff's missing photos.  (*Id.* at 6.)

On February 2, 2010, Plaintiff was ordered to pack up his belongings for transfer. His property was picked up on February 3, 2010, and Plaintiff was not allowed to access it between that time and February 5, 2010, when he was transferred.  When he arrived at the new facility, he discovered that his television and typewriter had been damaged or destroyed and that his footlockers were broken.  (*Id.* at 6.)  Plaintiff complains that the property must have been damaged by an

- 4 -

unknown individual in retaliation for Plaintiff's many grievances, one of which was addressed at Step III only two days before the transfer.

Plaintiff next contends that Warden Carol Howes must have tampered with his mail, evidenced by her response to his grievance number LCF 2010-04-0315-28-B, in which she revealed that ARF had sent at least one letter to him that he did not receive.  (*Id.*)  According to the referenced grievance, Warden Howes responded to Plaintiff's grievance as follows.  Howes stated that

> LCF was forwarded a letter from your previous facility in an envelope containing your return address and signed with your name.  The letter contained allegations of prisoners abusing dogs.  I asked your Insp[ector] to discuss the letter with you so that LCF could address the allegations since the letter did not contain names or details.  You said you did not write the letter and the matter was dropped as far as any involvement by you.  Counselors were told to monitor the dog handlers more closely.

(Ex. A to Compl., docket #1-2, Page ID#14.)  Plaintiff claims that the grievance response is proof that Howes is continuing to engage in retaliatory punishment, despite Plaintiff's now being housed at ICF, because Howes asked an ICF inspector to question Plaintiff about the content of the letter.  (Compl. at 6.)

Plaintiff seeks injunctive relief related to the protection of Wardens Forum representatives and disciplinary action against all Defendants.  He also seeks compensatory damages.

## Discussion

I.   Immunity

### A.   Sovereign Immunity

Plaintiff names the "C.F.A./M.D.O.C." as a Defendant in this action.  (Compl. at 1.) The CFA (Correctional Facilities Administration ) is a division of the MDOC.  Plaintiff may not maintain a § 1983 action against the MDOC or its subdivisions.  Regardless of the form of relief

requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the CFA and MDOC.

### B.    Defendant Jacobsen

Plaintiff makes a single reference to Defendant Jacobsen in the body of his complaint. Plaintiff states that Defendant Jacobsen was a hearing officer, who apparently presided over a legal property hearing at which Plaintiff's UCC materials were found to be contraband. Plaintiff alleges that confiscation of those materials was improper.

The duties of hearing officers are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS

§ 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts.  *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).  Therefore, the complaint against Defendant Jacobsen will be dismissed.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at

1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

>            To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Warden Bell

>            It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for

each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant Bell in the body of his complaint. His allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff intended to sue Defendant Bell in his supervisory capacity or for denying one of Plaintiff's many grievances, he also fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a

supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Bell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

## B.    Due Process – Property

Plaintiff claims that Defendant Condon improperly conducted a property hearing, stole Plaintiff's photos and other property, including Plaintiff's winter coat and gloves. Condon allegedly had the property destroyed before Plaintiff's daughter could pick it up. Plaintiff also alleges that Defendants Howes, Irvin, McConnell and Leskow withheld his property and removed unspecified documents.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized or negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure

to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751

F.2d 197 (6th Cir. 1985).

   Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state

post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are

available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the

institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy

Directive, 04.07.112, ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims

asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit

specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of

property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action

would not afford him complete relief for the deprivation, either negligent or intentional, of his

personal property.  Accordingly, Plaintiff's due process claim against Defendants Condon, Howes,

Irvin, McConnell and Leskow will be dismissed.

### C.  Due Process – Transfer

   Plaintiff alleges that Defendants transferred him from LCF to ARF without due

process.  He claims that he was without major misconducts and was serving as a Warden's Forum

representative and therefore should not have been transferred.

   The Supreme Court has held that a prisoner does not have a protected liberty interest

in the procedures affecting his classification and security because the resulting restraint does not

impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation.  The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id.; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).  Because

Plaintiff does not have a constitutional right to be housed at a particular facility, he fails to state a claim.

### D.    Eighth Amendment

Plaintiff complains that he was deprived of basic necessities when, at the direction of Carol Howes, he was kept caged for five hours while handcuffed on March 4, 2009.  He also alleges that, when his property was delayed during his transfer from LCF to ARF, Defendants Ingram and Condon were indifferent to Plaintiff's need for a change of clothes and hygiene materials, and effectively deprived him of such for a period of nine days.  Further, he alleges that Defendants Ingram and Condon made racist comments to him on May 18, 2009 and January 27, 2010, respectively.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

- 13 -

With respect to Plaintiff's claim that he was kept in a segregation cage for five hours on March 4, 2009, his allegations fall far short of the intolerable conditions proscribed by the Eighth Amendment.  Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).  Although it is clear that Plaintiff was denied certain privileges as a result of his brief segregation before his transfer, he does not allege or show that he was denied basic human needs and requirements.  He does not allege that he was denied food or water or access to a bathroom.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, No. 09-6283, 2001 WL 2579779, at *5 (6th Cir. June 29, 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

In addition, Plaintiff's claim about his deprivation of clothing changes and hygiene materials for two weeks also fails to rise to the level of an Eighth Amendment violation.  Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir.  2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)); *but see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that allegations that an inmate was

deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Here, Plaintiff claims that Ingram and Condon failed to provide him substitute clothing when his personal property was delayed at ICF.  In his attached grievances, Plaintiff expressly stated that, over the course of the nine days he was without clothing changes, he was forced to wash his underwear every night and wear it damp.  (Grievance No. ARF-2009-03-0473-17Z, Ex. G to Compl., Page ID#43.)  In addition, Plaintiff alleges that he became "malodorous" during that period.  (*Id.*)  It is apparent from the allegations that Plaintiff had access to soap and water.  Even if he was unable to wear clean clothing for a period of time, he nevertheless was able to wash himself.  Plaintiff alleges no harm arising from his deprivation.  As a consequence, the lack of clean clothing amounts to only a temporary inconvenience not protected by the Eighth Amendment.  *See Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *1 (6th Cir. Oct. 11, 1995) (lack of clean clothing and personal hygiene items for days did not amount to deliberate indifference to hygiene, even though plaintiff developed an underarm rash, because prisoner had access to a bathroom and fresh water every two hours); *Starnes v. Green Cnty. Sheriff's Dep't*, No. 2:08-cv-244, 2010 WL 2165368, at *4 (E.D. Tenn. May 26, 2010) (deprivation of linens and clean clothing for multiple days did not rise to Eighth Amendment violation).

Plaintiff next alleges that Defendants Ingram and Condon used racial slurs in addressing him.  An allegation that a prison official used racial slurs, although unprofessional and reprehensible, does not rise to constitutional dimensions.  *See Ivey*, 832 F.2d at 954-55; *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (prison guard's use of racial slurs and other derogatory language against state prisoner did not rise to level of a violation of the Eighth

Amendment) (citing *Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985)); *Williams v. Gobles*, No. 99-1701, 2000 WL 571936, at *1 (6th Cir. May 1, 2000) (occasional or sporadic use of racial slurs does not rise to a level of constitutional magnitude; *Bell-Bey v. Mayer*, No. 98-1425, 1999 WL 1021859, at *1 (6th Cir. Nov. 3, 1999) (same); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). In light of the foregoing, Plaintiff fails to state a claim for a violation of the Eighth Amendment based on Ingram's and Condon's remarks.

Moreover, even if one or more of Plaintiff's allegations had the potential to rise to the level of an Eighth Amendment violation, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U.S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### E.     Conspiracy

Plaintiff broadly alleges that Defendants have conspired with one another to engage in conduct that Plaintiff views as undesirable. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106

(6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe only a few discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined or subjected to undesirable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1950. In light of the far more likely possibility that the various

incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### F.    Retaliation

Plaintiff broadly claims that all of Defendants' actions were retaliatory, taken to punish him for speaking out at the Warden's Forum or for filing grievances.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  The court also will assume that speaking out at the Warden's Forum was protected First Amendment conduct.  *See Dye v. DeAngelo*, No. 09-14545, 2010 WL 4982925, at *6 (E.D. Mich. Nov. 4, 2010) (assuming without deciding that Warden's Forum participation was protected conduct).

- 18 -

Plaintiff, however, wholly fails to demonstrate either adverse action by any Defendant or any causal connection between his activities and any Defendant's conduct.

First, being questioned by an inspector on a single occasion is not adverse action because it falls far short of the kind of action that would deter a reasonable person from exercising his constitutional rights.

Second, Plaintiff's transfer from LCF to ARF did not amount to adverse action. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin,* 630 F.3d 468 (6th Cir. 2010).

Here, while Plaintiff alleges that ARF is "a facility known to have disdain" for him (Compl. at 4), he fails entirely to allege facts indicating that a transfer to ARF amounts to adverse action.  Plaintiff was transferred was from one level II facility to a level II unit at another facility. Moreover, although Plaintiff alleges that he initially was placed in a cell with a mentally ill inmate, such action does not constitute placement in an area of prison used to house mentally disturbed inmates, a situation alluded to in *Thaddeus-X*, 175 F.3d at 39.  Further, Plaintiff makes no allegation that any Defendant at LCF would have had any awareness of or control over Plaintiff's individual cell placement at ARF.  He therefore fails to state a retaliation claim based on his transfer.

Plaintiff also fails to demonstrate a causal connection between any particular exercise of his First Amendment rights and an allegedly adverse action. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538-39); *see also Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  While temporal proximity may be "'significant enough to

- 20 -

constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation in all of his claims. He has not presented any facts whatsoever to support his conclusion that any Defendant retaliated against him because of his grievances. For example, Plaintiff's allegation that Defendant Irvin issued a bogus misconduct ticket and that Defendant Adams doctored that misconduct ticket is wholly conclusory. In addition, Plaintiff fails to allege any connection between either Irvin or Adams and any particular grievance. Indeed, Defendants Irvin and Adams work at separate facilities and Plaintiff alleges no facts that would suggest they even knew one another. Similarly, Plaintiff fails entirely to allege any fact supporting his conclusion that his transfer was retaliatory, except to allege the simple fact that he had previously participated in the Warden's Forum. Moreover, given that Plaintiff filed 26 grievances during the nine-month period about which he complains, it is difficult to imagine that any Defendant could have committed any act that did not follow shortly on the heels of one of Plaintiff's grievances.

Because he has not presented any facts to support his conclusion that any Defendant retaliated against him for filing a grievance or participating in the Warden's Forum, Petitioner's speculative allegations of retaliation fail to state a claim.

## G.    Interference with Mail

Plaintiff alleges that Defendant Howes and other unknown Defendants stole or tampered with his mail, arguably in violation of the First Amendment. He appears to refer to

Defendant Howes' discussion of a letter forwarded to LCF from one of Plaintiff's prior addresses that was enclosed in an envelope containing Plaintiff's return address and signed by Plaintiff.

A prisoner retains only those First Amendment freedoms which are "'not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system . . . .'" *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (quoting *Pell v. Procunier,* 417 U.S. 817, 822 (1974)); *see Turner v. Safley,* 482 U.S. 78 (1987). It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston,* 334 U.S. 266, 285 (1948). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives - including deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Pell,* 417 U.S. at 822-823; *Procunier v. Martinez,* 416 U.S. 396, 412 (1974)).

Interference with a prisoner's incoming mail is constitutional if it is reasonably related to legitimate penological interests. *Thornburg v. Abbott,* 490 U.S. 401, 413 (1989). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the action and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner,* 482 U.S. at 89-90.

- 22 -

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh*, 490 U.S. at 413; *Turner*, 482 U.S. at 88.

Because the letter referenced by the prison was received by LCF, it was incoming legal mail, notwithstanding the fact that it was in an envelope that had Plaintiff's return address. Prison mail policy is governed by MICH. DEP'T OF CORR., Policy Directive 05.03.116. Under PD 05.02.118 ¶ GG, all mail not receiving special handling (i.e., legal mail), is opened, inspected for contraband, and skimmed for content violating prison policy. All incoming mail from one prisoner to another is read. *Id.*

Inasmuch as the allegations and Plaintiff's representations in the related grievance indicate that Plaintiff himself mailed (though he did not author) the letter to some unidentified person, it appears that the mail was returned to the prison for some unknown reason. The only other interpretation consistent with the warden's statement is that the envelope with Plaintiff's return address was forwarded by the recipient to LCF officials. Assuming the former, the opening and reading of such mail was consistent with prison policy and fully within the *Thornburgh* standard. Plaintiff's allegation that the mail was addressed to him is wholly unsupported by the warden's statement – the sole source upon which Plaintiff relies. Moreover, Plaintiff's claim that he did not receive unknown mail addressed to him is wholly conclusory and falls far short of demonstrating that any mail was stolen. Plaintiff makes no representation that he did not receive his returned mail.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed on grounds of immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>May 4, 2012</u>                                  <u>/s/ Robert Holmes Bell          </u>
                                                           ROBERT HOLMES BELL
                                                           UNITED STATES DISTRICT JUDGE